UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOEL FREYBERG,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>DCO 2400 14TH STREET, LLC, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 20-3156 (JEB) |

## MEMORANDUM OPINION

Plaintiff Joel Freyberg, a residential tenant at the Capitol View on Fourteenth apartment building in Northwest Washington, brought this action following a series of unfortunate events. He first alleges that an influx of guns and drugs have rendered the building unsafe. In addition, when contractors were working to remedy a flood in his apartment — caused by a stray bullet from a gunfight in another unit hitting a pipe in the building's sprinkler system — some of his personal items were stolen. He filed suit against the owner of the building, DCO 2400 14th Street, LLC, and its parent company, UDR, Inc., asserting claims for a breach of the implied warranty of habitability and negligence. Defendants now move to dismiss the case. Because the Court agrees that it must dismiss the first cause of action and declines to exercise its supplemental jurisdiction over the second, it will grant Defendants' Motion.

**I.　　Background**

The Court draws the relevant facts from the Amended Complaint, treating them as true for purposes of this Motion. See ECF No. 9 (Am. Compl.); see also Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Freyberg alleges that Capitol View on

Fourteenth is an unsecure building where "criminal gangs stor[e] automatic weapons and other illegal firearms, . . . [engage in] gunfights [with] resultant casualties, kidnappings, and abductions, and traffic[] in crystal meth, cocaine, and other illegal drugs." Am. Compl., ¶ 1. On January 4, 2020 — in a Palsgrafian chain of circumstances and while Freyberg was away from his apartment — a stray bullet from one such gunfight struck a water pipe. Id., ¶ 2. The resulting flood damaged more than 50 units in the building, including his. Id., ¶¶ 2–3. To remedy the water damage, Defendants hired contractors and provided them with access to the units requiring repair. Id., ¶ 3.

Freyberg returned home the day after the shooting, when contractors were remediating the flooding, to find his front door "unlocked and ajar" and people entering his apartment at will. Id. Despite having opened his door, Defendants were not present to oversee the repairs. Id. Freyberg then discovered that his "watches, cufflinks, other valuable jewelry, clothing, and shoes [were] missing" from his unit. Id., ¶ 4. He found some of those items — shoes and a few shirts — in a trash room, but he never recovered the others. Id., ¶¶ 4–5. Nor have Defendants reimbursed him for those losses. Id., ¶ 7.

In his Amended Complaint, Freyberg brings claims for the breach of the implied warranty of habitability and negligence, as well as what he labels a declaratory-judgment cause of action. Id., ¶¶ 40–69. He asks the Court to declare his lease invalid and unenforceable, and to award him compensatory and punitive damages in excess of $75,000. Id. at 14. Defendants now move to dismiss the Amended Complaint on the merits, and UDR also contends that personal jurisdiction is lacking. See ECF No. 10-1 (Def. MTD) at 1, 16–21. The Court heard argument from the parties on February 16, 2021, on its subject-matter jurisdiction, and it now addresses that pending Motion.

**II.     Legal Standard**

Defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Because the Court need not reach the parties' arguments on the former, it will skip to the relevant standard for the latter.

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." In evaluating Defendants' Motion, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). The Court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). For a plaintiff to survive a 12(b)(6) motion even if "'recovery is very remote and unlikely,'" moreover, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

The Court kicks off with the parties' arguments on the warranty of habitability (Count I) and determines that it must dismiss that claim. It then considers Plaintiff's remaining cause of

action (negligence), which it declines to entertain.  In so proceeding, the Court need not determine whether it has personal jurisdiction over UDR, a Colorado corporation, on the negligence claim.  See Am. Compl., ¶ 24; see also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 587–88 (1999) (concluding that courts should decide subject-matter before personal jurisdiction "in most instances").  It similarly does not address Count III (labeled Count IV), for "Declaratory Judgment," as this is a form of relief, not a stand-alone cause of action.  See Mohamed v. Select Portfolio Servicing, Inc., 215 F. Supp. 3d 85, 97 (D.D.C. 2016) (citing Ali v. Rumsfeld, 649 F.3d 762, 778 (D.C. Cir. 2011)).

    A.  Warranty of Habitability

DCO 2400 14th Street, LLC, contends that Plaintiff's warranty-of-habitability claim must be dismissed because he does not plead a violation of the District's Housing Code.  See Def. MTD at 5–6.  The Court agrees.  As a threshold matter, it concludes that this count may only be brought against DCO, as UDR is not a party to the lease contract in which the warranty is implied.  See Am. Compl., Exh. 4 (listing parties to lease as Joel Freyberg and DCO 2400 14th Street, LLC); see also Javins v. First Nat'l Realty Corp., 428 F.2d 1072–73 (D.C. Cir. 1970) (explaining warranty is "implied by operation of law into leases"); Parham v. CIH Properties, Inc., 208 F. Supp. 3d 116, 124 (D.D.C. 2016) (invoking implied warranty requires injured party to show "that there was a valid contract between the parties"); Def. MTD at 8–9 (arguing same).

In the District, all residential leases include an implied warranty of habitability.  See George Wash. Univ. v. Weintraub, 458 A.2d 43, 46 (D.C. 1983); D.C. Mun. Regs. tit. 14, § 301.1 (2021) ("There shall be deemed to be included in the terms of any lease or rental agreement covering a habitation an implied warranty that the owner will maintain the premises in compliance with this subtitle.").  Pursuant to the warranty, residential landlords must "exercise

4

reasonable care to maintain rental premises in compliance with the [D.C.] housing code." George Wash. Univ., 458 A.2d at 47. "The scope of this implied warranty 'coincides exclusively with the requirements of the Housing Regulations of the District of Columbia.'" Arthur v. D.C. Hous. Auth., 2020 WL 1821111, at *7 (D.D.C. Apr. 11, 2020) (quoting Winchester Mgmt Corp. v. Staten, 361 A.2d 187, 189 (D.C. 1976)), reconsideration denied, 2020 WL 3869725 (D.D.C. July 8, 2020); see also Javins, 428 F.2d at 1072–73 (noting warranty is "measured by the standards set out in the Housing Regulations for the District").

Plaintiff's claim fails to get out of the gate because he does not allege a violation of the Housing Code. He asserts that DCO breached the warranty "by allowing gang members access to [the] apartment building," by permitting the gunfight that led to the flood, and by "leaving [his] apartment open and vulnerable to theft." Am. Compl., ¶ 42. He further pleads that DCO violated the warranty by allowing activities that the building's standard lease prohibits, including drug dealing and the use of firearms and marijuana. Id., ¶¶ 44–45. These conditions — however unsettling — do not correspond to Housing Code violations, nor does the Amended Complaint so allege.

Arguing otherwise, Freyberg points in his Opposition to general sections of the Code that require the landlord to maintain safe premises as well as specific sections that mandate maintenance of exterior and interior doors and locks. See ECF No. 13 (Pl. Opp.) at 10 (citing, *inter alia*, Title 14 section 400.3, which prohibits renting habitation unless it is "in a clean, safe, and sanitary condition, in repair, and free from rodents or vermin"; section 700.1, which requires repairs to "make a premises or neighborhood healthy and safe"; and section 607.2, which requires doors and locks be provided and locks be kept "in good repair"). The Housing Code is not, however, a general safety mandate: its provisions specify the ways in which landlords must

"maintain rental premises." George Washington Univ., 458 A.2d at 49; see also Demisse v. Aldon Mgmt. Corp., 2020 WL 1244931, at *7 (D.D.C. Mar. 16, 2020) (granting dismissal where plaintiff alleged landlord's failure to "repair the premises" "put [his] health and safety at risk" because he "[did] not allege any housing code violations") (first alteration in original); Arthur, 2020 WL 3869725, at *2–3 (denying reconsideration of dismissed claim where allegation did not "implicate the landlord's obligation to 'maintain the premises'"); cf. Sobelsohn v. Am. Rental Mgmt. Co., 926 A.2d 713, 716 (D.C. 2007) (suggesting warranty may be "limited to issues involving the physical condition of the premises").

As to his more specific references to Housing Code provisions, Plaintiff never alleges in the Complaint that the building's lack of security stems from DCO's failure to provide or repair doors and locks. Nor do the conditions that he contends violate his lease save his claim, as the implied warranty concerns itself with the Housing Code alone. See Winchester Mgmt Corp., 361 A.2d at 189 ("[T]he landlord's duties under . . . [the] warranty [of habitability] are discharged when he has complied with the applicable standards set forth in the Housing Regulations"); see also Arthur, 2020 WL 1821111, at *7 (concluding same). The Court thus must dismiss Plaintiff's implied-warranty-of-habitability claim.

B. Negligence

Defendants next argue that Freyberg's negligence count should meet the same fate because the criminal activity committed by third parties, including the theft of items from his apartment, was not foreseeable. See Def. MTD at 9–11. The Court, however, declines to address the question.

The only jurisdictional basis for Plaintiff's suit is diversity of citizenship, see Am. Compl., ¶ 18, which requires both that the "controversy exceeds the sum or value of $75,000,

6

exclusive of interest and costs" and is between "citizens of different States." 28 U.S.C. § 1332(a)–(a)(1). In the hearing, Freyberg conceded that his negligence claim alone did not reach that amount-in-controversy threshold. See 2/16/21 Tr., 5:8–9 ("The only way we get to 75,000 [dollars] is if we prove a breach of the warranty of habitability . . . ."). This is because the unrecovered stolen items do not have that value. Had Freyberg brought only this count, then, the Court would not have jurisdiction.

In this Circuit, once the claims that brought the amount in controversy above $75,000 have been dismissed, a court has discretion over whether to proceed on the remaining state-law claims that "form part of the same case or controversy" via its supplemental (or "pendent") jurisdiction. See 28 U.S.C. § 1367(a); Stevenson v. Severs, 158 F.3d 1332, 1334 (D.C. Cir. 1998) (concluding in diversity case that, once amount in controversy falls below required minimum, § 1367(c)(3) gives courts discretion over whether to hear remaining claims); Camenisch v. Singh, 1998 WL 545434, at *1 (D.C. Cir. July 31, 1998) (same); see also Shanaghan v. Cahill, 58 F.3d 106, 112–13 (4th Cir. 1995) (same); but see Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 62–65 (2d Cir. 1999) (concluding otherwise because "diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset" and cataloging circuit split). While the Circuit recently cast doubt on Stevenson's conclusion, it did so merely in passing via a citation. See Bronner on Behalf of Am. Stud. Ass'n v. Duggan, 962 F.3d 596, 603 (D.C. Cir. 2020) (concluding that determination that original complaint satisfied amount-in-controversy requirement did not preclude reconsideration following filing of amended complaint). It did not consider this specific issue nor overturn the case. Id. at 602–06. Stevenson thus remains good law, which this Court is obliged to follow.

"[P]endent jurisdiction is a doctrine of discretion, not a plaintiff's right." Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005)) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)) (alteration in original).  In deciding whether to exercise that discretion, courts consider "factors such as 'judicial economy, convenience, fairness [to the parties], and comity [between the federal and state judiciary].'"  Stevenson, 158 F.3d at 1334 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)) (alterations in original).  When a court has dismissed all claims that provided its original jurisdiction "before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Shekoyan, 409 F.3d at 424 (quoting Carnegie-Mellon Univ., 484 U.S. at 350 n.7).

As the case has not progressed past the Motion to Dismiss and the Court has not developed familiarity with the negligence claim, it will decline to retain jurisdiction.  Freyberg must pursue this cause of action in the Superior Court.

**IV.   Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss without prejudice.  A separate Order consistent with this Opinion shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 8, 2021